No. 1,789.

## EICHEL *v.* THE SUPREME LODGE KNIGHTS OF PYTHIAS OF THE WORLD.

INSURANCE.—*Failure to Pay Premiums.*—*Forfeiture.*—*Mutual Benefit Association.*—The provision in a certificate of life insurance, in a mutual benefit association, that monthly payments shall be due and payable to the secretary of the local section, without notice, on the first day of each and every month, and a failure to make such payment on or before the tenth day of each month, shall cause, from and after such date, a forfeiture of such certificate, is not waived by the promise of the president of the section, as a personal favor to the agent of the insured, to notify him when anything should become due on the certificate, and his failure to keep such promise, where he did not assume to act for or in behalf of the insurer in making such promise.

From the Vanderburgh Superior Court.

*C. B. Harris* and *W. W. Ireland,* for appellant.

*J. C. Owen,* for appellee.

DAVIS, J.—This action was instituted by the appellant, against the appellee, to recover on a certificate of life insurance, issued by the appellee through the board of control of the Endowment Rank, Knights of Pythias of the World, on the life of appellant's husband, in the sum of $2,000.00, payable to her on his death.   A trial by jury resulted in a judgment for appellee.

The certificate provides that said sum is payable to the beneficiary "in consideration of the payment hereafter to said Endowment Rank of all assessments as required, and the full compliance with the laws governing this rank, now in force, or that may hereinafter be enacted," etc.

The general laws provide that "Monthly payments of members holding certificates of endowment shall be due and payable to the secretary of the section, without notice, on the first day of each and every month, and a failure to make such payment on or before the tenth day of each month shall cause, from and after such date, a forfeiture of the certificate of endowment, and all right, title and interest of such member, or his beneficiaries, may have in and to the same, and membership shall cease absolutely."

The amount which the member in this instance agreed to pay, as prescribed by the general laws of the order, was $2.10 per month. The time or amount of payment never varied. The insured was regularly required to pay $2.10 each month.

The certificate in question was issued in March, 1892.

Marx Eichel, the insured, paid the monthly payments to and including March, 1893. In that month his health became impaired, and he was thereafter more or less indisposed and disabled. In March, 1893, he appointed Ben Weil his agent, to attend to his business for him. At that time R. S. McJilton was secretary, and Dr. Short was president of the section to which Eichel belonged. On the 23d of that month Weil was attending to Eichel's business, when his attention was called to the policy held by Eichel in the Endowment Rank of the Knights of Pythias. In this connection, we quote from the testimony of said Weil, as found in appellant's brief, as follows:

"Quest. Did you talk to anybody in regard to it? Ans. McJilton called my attention to it.

"Quest. Tell the conversation between you and Standard McJilton. Ans. Between fifteen minutes and a half hour before I left there to come home, McJilton came to my room and said, 'Ben, have you

made any arrangements about Marx's insurance?'— and I said, 'No; I never thought of it.' Then I said, 'Who shall I make the arrangements with?'—and he said, 'I am the secretary, but I am going to leave in a few days and Dr. Short will attend to my business. You go over to Dr. Short and leave the money with him.' It was only a few steps over from the hotel to Dr. Short's, perhaps seventy-five yards. I went down. I met Riddle, and he said, 'Where are you going?'—and I said, 'To Dr. Short's.' * * * And we went over together, and I asked Dr. Short if Marx owed anything. He said, 'No, but you better leave money here in case something becomes due.' And I left $4.20. After that I said, 'Marx is in a bad shape, and I am to attend to his business, and will you notify me if anything becomes due,' and he said 'Yes.' "

"Ans.    I went back to the Carlyle Hotel. McJilton was still there, and I told him I had left $4.20, and told him that when this money was exhausted Dr. Short would notify me, and he said that was all right.

"Quest.    You reported what you had done with Dr. Short.    Ans.    Yes, sir."

This $4.20 paid the April and May installments. Nothing was paid in June or July. Weil was not notified or informed by said Short, or any other person, that anything was due from Eichel until after his death on the 25th of July, 1893.

The position of counsel for appellant is, that Short and McJilton had authority to change, by parol agreement, the time when the payments should be made by the insured, and that notice of payment should be given before payment was required, and that the testimony shows that they agreed that notice should be given by them to Weil before any further payment should be required on the Eichel certificate, and that because the notice was not given there was no for-

feiture by reason of the failure to pay the June and July payments.

Assuming, without deciding, that the forfeiture, which results from the failure to make the payments before the tenth of the month, might be waived by an agent, the question remains, whether the evidence shows such waiver in this case.

The evidence on which appellant relies, is, that Weil, when he paid the $4.20, said to Short, "Will you notify me if anything becomes due?" and that Short said "Yes."

This is the gist of the entire evidence on the subject.

We cannot construe this evidence as a waiver by Short of any of the provisions of the contract.

There was no misunderstanding about any payments. There was no pretense that Eichel had made any advance payments. Eichel was advised of the conversations between Weil, and Short and McJilton. So far as the record discloses, the parties in interest all knew that $2.10 became due and payable on or before the 10th of each month.

No time of payments was extended. No payment or forfeiture was waived. When Dr. Short, in response to Weil's request, said he would give him notice if anything became due on the certificate, it docs not appear that he was assuming to act for or in behalf of appellee as to the giving of such notice. He did not deceive or mislead Weil by assuming to have authority to change the terms of the contract, as to either the time or notice of the monthly payments. If there had been any misunderstanding or misrepresentation as to any fact or any statement that no further payment would be required by appellee until notice was given, or that the forfeiture for nonpayment before the tenth of the month would be waived by appellee, or by the agent for appellee,—then the

question as to whether the agent was acting within the official scope of his authority might be material. But assuming, as we have, for the purpose of this decision, the existence of the authority, we are of the opinion that there is no evidence in the record tending to prove that the agent agreed for or in behalf of appellee to give Weil notice before any further payment would be required, or that he in any manner assumed, in behalf of appellee, to change or waive any provision of the contract, or of the laws of the order.

The most that can be claimed on the evidence is, that, as a personal favor to Weil, Dr. Short promised to notify him when anything should become due on the Eichel certificate.

Moreover, as a matter of fact, the knowledge or information of Dr. Short, as to when any payments became due, was not greater than that of the parties in interest. Neither appellant nor her husband were deceived or misled as to the time when the payments became due.

In the view we take of the case, it is not necessary to consider the other question presented. The evidence, when most favorably construed in behalf of appellant, fails, in our opinion, to show any right of action in her favor.

A right result having been reached by the jury, no reason exists for disturbing the judgment of the trial court.

Judgment affirmed.

Filed May 8, 1896.